Quarles & Brady LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, Arizona 85004-2391
Telephone 602.229.5200

John Maston O'Neal (#015945)
John.oneal@quarles.com
Benjamin C. Nielsen (#029689)
Benjamin.nielsen@quarles.com
Lukas M. Landolt (#034759)
Lukas.landolt@quarles.com

*Attorneys for Defendants Homerun Offer, LLC
and All Star Investments, LLC*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Josh Jance, <br><br> Plaintiff, <br><br> vs. <br><br> Home Run Offer, LLC; All Star Investments, LLC; House Buyers USA, LLC, <br><br> Defendant. | Case No. 4:20-cv-00482-JGZ <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** <br><br> **(Oral Argument Requested)** |

## <u>INTRODUCTION</u>

Defendants demonstrated in their Motion to Dismiss (the"Motion") that the Second Amended Complaint (the "SAC") fails to state a claim against Defendants for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* The Response does not save Plaintiff's deficient claims. Rather, the Response proffers superfluous information which is not in the SAC and cites distinguishable and non-controlling cases from other jurisdictions to make points that are, at least in many instances, irrelevant.

It is difficult to decipher exactly how all of the contentions in the Response relate to controlling law (and in particular with an antagonistic Plaintiff who advises others to go kill themselves). Nevertheless, Plaintiff does clearly concede the following in the

Response:

- *All the calls at issue were made for the purpose of offering to buy something from Plaintiff and were not telemarketing or solicitation calls to sell Plaintiff something.  See* Resp. at 7.  This alone necessitates dismissal of any claim brought under 47 U.S.C. § 227(c).

- *Plaintiff did not allege that his telephone number is registered with the National "Do Not Call" Registry.  See* Resp. at 7.  This independently necessitates dismissal of any claim brought under 47 U.S.C. § 227(c).

- *There is no private right of action for any claim asserted under 47 U.S.C. § 227(e) (e.g., claims based on allegations of "spoofing").  See* Resp. at 8-9.  This alone necessitates dismissal of any claim brought under 47 U.S.C. § 227(e), to the extent it is a "spoofing" claim.

- *Each time Plaintiff answered a phone call he spoke to an actual live person, and did not hear an artificial or prerecorded voice.  See* Resp. at 2, 6.  This alone necessitates dismissal of any claim brought under 47 U.S.C. § 227(b)(1)(A).

- *Plaintiff claims that because Voice Over Internet Protocol was used to make the calls at issue and created "spoofing", Plaintiff has plausibly shown that an ATDS was used in violation of the TCPA.*  Those allegations are insufficient to state a claim under 47 U.S.C. § 227(b)(1)(A).

- *Plaintiff's sole argument for attributing liability to Defendant All Star Investments, LLC ("All Star") is that one person is a common officer of both Defendants.  See* Resp. at 9-10. This does not come close to establishing either personal jurisdiction over, or a valid claim against, All Star.

///

///

///

QB\66631882.3

**ARGUMENT**

**I.    PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER § 227(c).**

> **A.    No Telemarketing or Telephone Solicitation.**

Plaintiff reasserts in his Response that the calls purportedly made to his cellular phone constituted a "telephone solicitation" or "telemarketing" and therefore violated 47 U.S.C. § 227(c).  However, Plaintiff repeatedly concedes that every call at issue in this matter was made for the purpose of *offering to purchase* Plaintiff's home, rather than to sell Plaintiff something.  *See* Resp. at 3, 6, 7, 14.  And as discussed in the Motion, such calls do not violate § 227(c) because telephonic offers to purchase do not constitute "telephone solicitations" or "telemarketing" under the decisive caselaw cited in the Motion.  *See* Mot. at 10-11.

Plaintiff nonetheless argues that Defendants "ignore[] more recent court findings . . . that solicitations to purchase count as advertisements under the TCPA."  Plaintiff did not cite (because he cannot) a controlling Ninth Circuit decision to support this argument.  Rather, Plaintiff again invokes the *Fischbein v. Olsen Research Group, Inc.* decision from the Third Circuit.  959 F.3d 559 (2020).

Defendants did not ignore *Fischbein,* and did explain why that decision does not save Plaintiff's claims.  That is, the language which Plaintiff quoted to support his position was taken out of context from the court's analysis of an unrelated TCPA provision that prohibits the transmission of "unsolicited advertisements" "to a telephone facsimile machine."  *See* Mot. at 11 n.6; *see also Fischbein*, 959 F.3d at 562-63.  That has nothing to do with the allegations in the SAC, and certainly does not trump the caselaw which Defendants cited in their Motion.

> **B.    No Registration With the National Do Not Call Registry.**

Similarly, Plaintiff's Response fails to address any of the case law cited in the Motion that holds that the prohibitions promulgated under § 227(c) (e.g., 47 C.F.R. § 64.1200(d)) apply only to *residential telephone subscribers who have registered their numbers on the national do-not-call registry*.  *See* Mot. at 11-12.  Instead, Plaintiff relies

on his own interpretations of the applicable regulations to defend his position.  Such arguments – directly contradicted by the case law cited by Defendants – fail.  Defendant did not register his number on the national registry, and does not allege that any of the calls identified in the SAC were made to a residential number.

As such, the Court should dismiss every claim relating to a purported violation of 47 U.S.C § 227(c) – including those brought pursuant to 47 C.F.R. § 64.1200(d)(1), (3)-(4), and (6) – with prejudice.

## II.   THERE IS NO PRIVATE CAUSE OF ACTION UNDER § 227(e)

The SAC is filled with allegations about "spoofing" and ostensible violations of 47 U.S.C § 227(e).  Defendants demonstrated in their Motion that there is no private cause of action under that section of the TCPA for "spoofing".  Defendant concedes this in his Response.  In light of the above, the Court dismiss all of the claims and allegations against Defendants predicated on § 227(e).

## III.   PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER § 227(b).

To state a claim under § 227(b) of the TCPA, the Plaintiff must allege facts which demonstrate that the defendant called a cell phone, without consent, and that she did so either using (1) an artificial/prerecorded voice, or (2) an ATDS.   47 U.S.C. § 227(b)(1)(A); *see also Meyer v. Portfolio Recover Assocs.*, *LLC*, 707 F. 3d 1036, 1043 (9th Cir. 2012).

### A.   No Artificial/Prerecorded Voice.

Plaintiff alleges that in each and every call he had with Defendants, he spoke with a live person.  Indeed, Plaintiff affirmatively alleges that when he spoke to those persons, he told them to take him off their lists and to then kill themselves.  Mot. at 9; SAC at ¶¶ 11, 15, 82.  Plaintiff does not allege that an artificial voice or a prerecorded message was used in any of the alleged calls.  As such, Plaintiff cannot sustain a claim under that part of 47 U.S.C. § 227(b) related to artificial voices or prerecorded messages.

### B.   Insufficient Allegations Regarding An ATDS.

To plead a claim under § 227(b) for the improper use of an ATDS, Plaintiff "must

-4-

allege sufficient facts to allow the Court to '***reasonably infer***' that [a defendant] used an ATDS." *Schick v. Compass Lending Corp.*, 2019 WL 6050256, at *2 (D. Ariz. Nov. 15, 2019) (citations omitted).

Here, Plaintiff repeatedly relies on the conclusory allegation that an ATDS was used.  (SAC ¶ 28) ("***All telemarketing calls made by the Defendant to the Plaintiff were made via an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227 (a)(1)***.") (emphasis added). This is a mere parroting of the statutory language, which is insufficient.   Moreover, and although it is difficult to understand exactly all that Plaintiff is trying to accomplish in his winding 94-page SAC, it appears that – other than this plain legal conclusion in Paragraph 28 of the SAC – Plaintiff rests the remainder of his ATDS argument on unpublished cases from other districts/circuits (Resp. at 5-7), and an allegation that the calls placed to his cell phone were made using "spoofed" Voice over Internet Protocol ("VoIP") calls (SAC ¶¶ 19-29).  This "support" is insufficient and fails for several reasons.

First, and perhaps most fundamentally, Plaintiff fails to cite to a single Ninth Circuit decision to support his position and instead relies only on personal argument and a few quotes cherry-picked from a few unpublished decisions from a District Court in the Northern District of Illinois, all of which are inapplicable to the arguments raised by Defendants in the Motion.  *See* Resp. at 5-6.  Without persuasive (much less binding) authority to support his arguments, Plaintiff's Response does nothing to overcome the legal deficiencies of the SAC identified in the Motion, which set forth the law governing treatment of TCPA claims in this Circuit.

Second, Plaintiff's support for his ATDS claim is fundamentally fallacious and flawed.  The conclusion that an ATDS was used simply does not plausibly or logically follow from Plaintiff's allegation that VoIP was used.  Plaintiff's argument appears to go like this:

- Calls were made to Plaintiff's cell phone (SAC ¶ 13).
- Because those calls were "spoofed", the calls were VoIP calls (SAC ¶¶ 19-

25).

- Making VoIP calls requires the use of a "computer", because a computer is needed to connect to the internet.  (SAC ¶¶ 22, 27).[1]
- Computers generally have the capacity to store or produce telephone numbers and can in some cases store or produce telephone numbers randomly or sequentially and even dial those numbers (SAC ¶ 22).
- Defendants must therefore have used an ATDS to make the calls to Plaintiff's cell phone because an ATDS can also do those same things (SAC ¶ 28).

There is a vast leap in logic from the premise that VoIP calls were made to Plaintiff to the conclusion that an ATDS was used.  Indeed, and as noted in footnote 4 of the Motion, Plaintiff's own cited source Webopedia states that computerized telephone systems are not needed to make VoIP calls.  In short, an allegation that there was a call placed using VoIP does not lead to a reasonable inference that specialized automatic telephone dialing software and equipment were used to make calls to Plaintiff.

Moreover (and bluntly put), Plaintiff contention that a "computer" which can connect to the internet equates to the unlawful use of an ATDS borders on absurdity. Anything with an electronic circuit connected to a landline or a WiFi server can use the internet.  Under Plaintiff's argument, Grandma's Jitterbug Phone[2] is an ATDS.  A 1990s-era cordless phone which (under then state-of-the-era technology) stores five numbers of friends and family is an ATDS.  Every high school student in the country who has an iPhone with "contacts" is using an ATDS.  Of course that cannot be the case.

Just because a device with a circuit or a computer chip can do some of the same things that an ATDS can do (and even if the call was not automated and human intervention was required to make that call) does not make the device an ATDS.  And certainly Plaintiff has not and cannot plausibly allege that the calls placed to his cellular

---

[1] This is, incidentally, false.  *See* Mot. at 8 n.4.
[2] https://www.greatcall.com/phones/jitterbug-smart-smartphone-for-seniors

phone were made by a device that ***automatically dialed his cellular phone number without human intervention***.  *See, e.g.*, *Meier v. Allied Interstate, LLC*, 2020 WL 819014, at *6-7 (S.D. Cal. Feb. 19, 2020) (holding "that the LiveVox HCI system is incapable of 'non-manual' dialing because it requires the intervention of clicker agents, and thus is not an ATDS").

In short, just because Plaintiff has alleged that calls were made using VoIP does not plausibly suggest that an ATDS was therefore used.  Indeed, although Plaintiff relies heavily on his allegations of VoIP and "spoofing" and cites to an unpublished opinion from a Seventh Circuit district court for support, Plaintiff does not cite to – nor have Defendants been able to identify – a single case within the Ninth Circuit in which an allegation of "spoofing" or use of VoIP was sufficient to plead the violative use of an ATDS.[3]  *See* Resp. at 6 (citing *Zeidel v. Nat'l Gas & Elec., LLC*, 2019 WL 2161546 (E.D. Ill. May 17, 2019).  In fact, at least one court in the Ninth Circuit has expressly found allegations of "spoofing" to be entirely "irrelevant to whether [a defendant] used an ATDS."  *See Waterbury v. A1 Solar Power Inc.*, 2016 WL 3166910, at *3 n.3 (S.D. Cal. June 7, 2016).

<u>Third</u>, Plaintiff's suggestion that "it would be impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of [ATDS] machine used" is not unique to this plaintiff.  Courts in the Ninth Circuit have recognized the difficulty a plaintiff faces in knowing what type of calling system was used without first taking discovery, and yet they have still uniformly held, as set forth above, that a Plaintiff must nevertheless allege sufficient facts in her Complaint "to allow the Court to '***reasonably infer***' that [a defendant] used an ATDS."  *See generally Schick v. Compass Lending Corp.*, 2019 WL 6050256, at *2 (emphasis added).  With respect to whether an ATDS was used here, Plaintiff has simply not done enough in the SAC to nudge the line from possible to plausible.  Further, despite Plaintiff's suggestion to the contrary, Defendants

---

[3] Plaintiff also did not cite to any authority to support the proposition that use of VoIP somehow supports the use of an ATDS.

are not arguing that Plaintiff must identify **the type** of ATDS machine Plaintiff believes was used in any event.  Defendants instead are applying the law as it has been handed down in **this** Circuit by pointing out that Plaintiff must (but did not) allege sufficient facts which would allow this Court to reasonably infer that Defendants used an ATDS.  The SAC does not do this.

Finally, as discussed in detail in the Motion (and which Plaintiff fails to address in the Response), Plaintiff's conclusory and implausible allegations of Defendants' use of an ATDS are completely belied by Plaintiff's blatant admission that **he spoke to a live person** in every instance in which he answered an alleged "telemarketing" call.  *See* Mot. at 8-9; *see also* Resp. at 2 (noting that Plaintiff "repeatedly instructed the caller calling on behalf of the Defendant to go kill herself").  Both the *Duran* and *Duguid* cases out of the Ninth Circuit, cited in the Motion at page nine (9), suggest that these types of allegations actually negate the claim that an automated dialing system was used (and they certainly do not provide plausible support for the use of an ATDS.

Accordingly, the Court should dismiss every claim relating to a purported violation of 47 U.S.C. § 227(b), with prejudice.

## IV.   PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST DEFENDANT ALL STAR.

Plaintiff next asserts that Defendant All Star is vicariously liable for the actions of Defendant Homerun, and even argues that Defendants have stipulated as much.  *See* Resp. at 9-10.  Of course, Defendants did not so stipulate, and instead maintain and assert that Plaintiff has not pled facts sufficient to establish a plausible agency relationship between Defendants.  *See* Mot. at 13-15.  Indeed, after regurgitating the allegations in the SAC, Plaintiff concedes that the sole fact supporting a vicarious liability claim against Defendant All Star is the "fact that the same individual (Ryan Pineda) is the President and CEO" of both Defendants.  Resp. at 9-10.  But this concession dooms Plaintiff's claims because common ownership between two entities is insufficient to establish an agency relationship.  *See Kristensen v. Credit Payment Servs., Inc.*, 879 F.3d 1010, 1014 (9th Cir.

2018) (actions under the TCPA "incorporate federal common law agency principles of vicarious liability" as derived from the Restatement (Third) of Agency) (citation omitted); Restatement (Third) of Agency § 1.01, cmt. c (noting that the "right to control" is an essential element of an agency relationship).  Accordingly, Plaintiff has failed to allege sufficient facts to support ***any*** claims against Defendant All Star.

## V.   THE COURT SHOULD DISMISS DEFENDANT ALL STAR FOR LACK OF PERSONAL JURISDICTION UNDER RULE 12(B)(2).

Relying on the Ninth Circuit's test for specific jurisdiction, Plaintiff argues at length that the Court should exercise jurisdiction over Defendant All Star.  *See* Resp. at 10-14.[4]  This test, as Plaintiff appropriately notes, requires Plaintiff to show that 1) Defendant All Star purposefully availed itself of the privilege of conducting activities in Arizona or purposely directed its conduct toward Arizona and 2) that Plaintiff's TCPA claims arise out of or relate to Defendant All Star's forum-related activities.  *See Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015).

Plaintiff appears to rely on three allegations in the SAC to establish the first two prongs of the Ninth Circuit specific jurisdiction test: 1) Defendant All Star purportedly purchased six properties in Pima County, Arizona between October 2019 and June 2020 (SAC ¶ 68); 2) "the initial contact with the other parties to those transactions [allegedly] came about as a direct result of the telemarketing activities of [Defendant Homerun]" (SAC ¶ 69); and 3) "[t]here is a common ownership structure among the Defendants" (*i.e.*, Mr. Pineda is the President and CEO of both Defendants) (SAC ¶¶ 78, 110-11, *see also* Resp. at 10-11).[5]  Resp. at 11-13.

---

[4] Plaintiff makes no argument to challenge Defendants' assertion that Defendant All Star is not subject to general jurisdiction in Arizona.  *See* Mot. at 15-16.

[5] Although Plaintiff also concludes in his Response that the purported telemarketer's message about "working with a local investor" was "clearly" a reference to Defendant All Star (Resp. at 11), that claim is directly contradicted by his own allegations in the SAC, which claim that the alleged "telemarketer" explicitly identified only Defendant Homerun as the entity offering to purchase Plaintiff's home during Call #5 and Call #6 (SAC ¶¶ 52, 56-57; SAC pp. 19, 32).  Further, Plaintiff's reliance on Mr. Pineda's alleged Instagram

-9-

But ***even if*** Defendant All Star engaged Defendant Homerun to make offers to Pima County residents, which ultimately resulted in Defendant All Star's purchase of the six Pima County properties alleged in the SAC (and notably, Plaintiff has not alleged ***any facts*** to support such a conclusion), Plaintiff does not allege that any of these properties are related to Plaintiff's home for which the "telemarketer" made offers to purchase. Moreover, the allegation of common ownership has no bearing on the Ninth Circuit test because that allegation does not lend support to either the first or second prong.  In other words, Mr. Pineda's positions as the President and CEO of both Defendants – both of which are Nevada LLCs – does nothing to show that Defendant All Star purposefully directed its conduct toward Arizona or that Plaintiff's TCPA claims relate to Defendant All Star's activities in Arizona.

In sum, Plaintiff has failed to make a prima facie showing to support the Court's exercise of specific jurisdiction over Defendant All Star because Plaintiff cannot show that his TCPA claims arise out of or relate to Defendant All Star's activities in Arizona. Accordingly, the Court should dismiss Defendant All Star pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

## VI.  <u>CONCLUSION.</u>

For the foregoing reasons, Defendants respectfully request that the Court grant the Motion and enter an Order:

- Dismissing any and all claims based on a purported violation of 47 U.S.C. § 227(b) to the extent they are based on the usage of an artificial or prerecorded voice (as such flies directly in the face of the SAC's allegations);

- Dismissing any and call claims based on a purported violation of 47 U.S.C. § 227(b) to the extent they are based on the purported usage of an ATDS (as the SAC contains insufficient factual allegations to allow the Court to

post (SAC ¶ 70) is equally unpersuasive because there is zero indication – nor does Plaintiff allege – that the post was made specifically on behalf of Defendant All Star.

reasonably infer that an ATDS was used);

- Dismissing any and all claims based on a purported violation of 47 U.S.C. § 227(c) because Plaintiff concedes that all alleged calls to Plaintiff's cellular phone were made for the sole purpose of offering to purchase something from Plaintiff, not to sell him anything, which activity is not prohibited under § 227(c);

- Dismissing any and all claims based on a purported violation of 47 U.S.C. § 227(e) relating to "spoofing," because, as Plaintiff concedes, there is no private right of action for such claims; and

- Dismissing Defendant All Star because (1) the SAC contains almost zero allegations against it (and certainly not enough to plausibly state any claim against it), and (2) the SAC fails to demonstrate that the Court can exercise general or specific jurisdiction over Defendant All Star.

RESPECTFULLY submitted this 28th day of January, 2021.

QUARLES & BRADY LLP
Renaissance One
Two North Central Avenue
Phoenix, AZ  85004-2391

By */s/ John M. O'Neal*
John M. O'Neal
Benjamin C. Nielsen
Lukas M. Landolt

*Attorneys for Defendants Homerun Offer, LLC and All Star Investments, LLC*

QB\66631882.3

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 28, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and delivered a copy of the foregoing via United States Mail to the following:

> Josh M. Jance
> 3223 East Kleindale Road
> Tucson, AZ 85716
> JoshJance@gmx.com
> *Plaintiff Pro Per*

*/s/ Debra L. Hitchens*

QB\66631882.3